UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MONSTER ENERGY COMPANY, a
Delaware corporation,

     Plaintiff,

v.

MY ENERGY MONSTER, INC., a
Florida corporation; and JOSHUA LEET,
an individual,

     Defendants.

CASE NO.

**COMPLAINT FOR TRADEMARK
INFRINGEMENT AND DEMAND
FOR JURY TRIAL**

**INJUNCTIVE RELIEF SOUGHT**

Plaintiff Monster Energy Company ("Plaintiff" or "Monster Energy") hereby files this Complaint against Defendants, My Energy Monster, Inc., a Florida corporation ("Energy Monster") and Joshua Leet ("Leet"), an individual (collectively referred to as "Defendants"), and alleges as follows:

## I.  JURISDICTION AND VENUE

1.     This is an action for (1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), (2) trademark infringement under 15 U.S.C. § 1114, (3) trademark dilution under 15 U.S.C. § 1125(c), (4) unfair competition arising under Florida Statutes § 501.201 *et seq.*, Fla. Stat. (2010), and (5) Florida common-law unfair competition.

2.     The Court has original subject matter jurisdiction over the claims that relate to trademark infringement, trade dress infringement, and false designation of origin pursuant to 15 U.S.C. §§ 1116 and 1121(a) and also pursuant to 28 U.S.C. §§ 1331 and

1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court has personal jurisdiction over Defendants because they have a continuous, systematic, and substantial presence within this Judicial District and within Florida. Energy Monster has a principal place of business in this Judicial District and Mr. Leet resides in this Judicial District. Defendants also market and render goods and services in connection with their infringing marks and trade dress to consumers in Florida, including within this Judicial District. In addition, by committing acts of trademark infringement, false designation of origin, and unfair competition in this Judicial District, including, but not limited to, by using infringing marks and trade dress in connection with the advertisement, marketing, promotion, and/or rendering of goods and services to customers in this Judicial District, Defendants' acts form a substantial part of the events or omissions giving rise to Monster Energy's claims.

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because, inter alia, Defendants reside in this Judicial District and a substantial portion of the events complained of herein took place in this Judicial District.

## II.  **THE PARTIES**

5.     Monster Energy is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona,

California 92879.

6.      Energy Monster is a corporation organized and existing under the laws of the State of Florida, having a principal place of business at 12087 62 Street North, Suite 2, Largo, Florida 33773.

7.      Leet is an individual having an address of 426 Magnolia Ave, Anna Maria, Florida 34216.   Leet is the President and Founder of Energy Monster, and, upon information and belief, is the controlling force of Energy Monster.

### III.  <u>COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF</u>

**A.      <u>Monster Energy's Trademarks and Trade Dress</u>**

8.      Monster Energy is a nationwide leader in the business of developing, marketing, selling, and distributing beverages.

9.      In 2002, long before Defendants' acts described herein, Monster Energy launched its MONSTER ENERGY® drink brand, bearing its now famous MONSTER ENERGY® mark.

10.      Monster Energy's successful line of MONSTER ENERGY® drinks has grown to include numerous other well-known products, the containers and packaging of which are prominently marked with Monster Energy's famous MONSTER ENERGY® mark.   The MONSTER ENERGY® line of drinks includes or has included, but is not limited to original Monster Energy®; Lo-Carb Monster Energy®; Monster Energy® Zero Sugar; Monster Energy® Import; and the Monster Energy Ultra® line of beverages, among others (referred to collectively as "MONSTER ENERGY® line of drinks").

11.     Representative images showing some of the products in Monster Energy's

MONSTER ENERGY® line of drinks are shown below:

  

12.     Monster Energy is also the owner of numerous trademark registrations for

marks that incorporate its famous MONSTER ENERGY® mark, for use in connection with

beverages, nutritional supplements, clothing, sporting goods, the promotion of goods and

services in the sports, motorsports, electronic sports, and music industries, and other

products and services, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions | 03/12/2014 | 04/14/2015 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | for others | | |
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/2002 | 02/7/2006 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; all-purpose carrying bags; backpacks; duffle bags | 04/02/2009 | 02/22/2011 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,332,062 | Silicone wrist bands; silicone bracelets; jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 4,660,598 | Lanyards; lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/2007 | 10/11/2011 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
|  | 4,865,702 | Nutritional supplements in liquid form<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 12/08/2015 |
| LO-CARB MONSTER ENERGY | 3,852,118 | Nutritional supplements<br><br>Non-alcoholic beverages, namely, energy drinks, drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 02/13/09 | 09/28/10 |

13.     Attached hereto as Exhibits 1-16 are true and correct copies of Monster Energy's trademark registrations identified in Paragraph 12 of this Complaint, which are hereby incorporated by reference.   Collectively, those registrations and trademarks, including all common law rights therein, are referred to as the "MONSTER ENERGY® Marks."

14.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,044,315; 3,057,061; 3,908,601; 3,914,828; 3,908,600; 4,332,062; 3,044,314; 3,134,842; 4,036,680; 4,036,681; 3,134,841; and 3,852,118 are incontestable.

15.     In addition, since 2002, Monster Energy has consistently used a distinctive trade dress in the way it presents its products in both its packaging and promotional materials, using the word "Monster" in combination with the colors green and black, with and without the word "Energy" (the "MONSTER ENERGY® Trade Dress"). One example of Monster Energy's use of the MONSTER ENERGY® Trade Dress is shown below:



16.     Long before Defendants' acts described herein, Monster Energy used or licensed the use of its MONSTER ENERGY® Marks and/or MONSTER ENERGY® Trade Dress in connection with a variety of goods and services, including in connection with motorized vehicles and motorsports, automotive wheels, graphic kits for motorized vehicles, tool boxes, gloves, helmets, stickers, sporting equipment, bags, backpacks, and

other related accessories.  True and correct examples of authorized products and vehicles

bearing Monster Energy's MONSTER ENERGY® Marks are shown below:

 

 










17.     Monster Energy's use of its MONSTER ENERGY® Marks and/or MONSTER ENERGY® Trade Dress also extends to clothing and accessories, including, for example, t-shirts, hooded shirts, hooded sweatshirts, sweatshirts, jackets, pants, bandanas, sweat bands, headgear, stickers, beverageware, bottle openers, beverage coolers, and decals.   True and correct examples of authorized apparel and accessories bearing Monster Energy's MONSTER ENERGY® Marks and/or MONSTER ENERGY® Trade Dress are shown below:

 


















18.    Monster Energy's MONSTER ENERGY® Marks and MONSTER
ENERGY® Trade Dress are the subject of substantial and continuous marketing and
promotion by Monster Energy.  Since 2002, Monster Energy has spent more than $6.2
billion dollars advertising, promoting, and marketing its MONSTER ENERGY® brand and
MONSTER ENERGY® Trade Dress.  Between 2002 and 2011, prior to Defendants' acts
alleged herein, Monster Energy spent approximately $800 million dollars advertising,
promoting, and marketing its MONSTER ENERGY® brand and MONSTER ENERGY®
Trade Dress.  In 2010 alone, Monster Energy spent approximately $200 million dollars
advertising, promoting, and marketing its MONSTER ENERGY® brand and MONSTER
ENERGY® Trade Dress.

19.    Monster Energy has and continues to widely market and promote its
MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress by displaying the

marks and trade dress on billions of cans of its MONSTER ENERGY® drinks sold in the United States. Monster Energy's promotional efforts include — by way of example but not limitation — sponsorship of athletes, athletic teams, athletic competitions, concerts and live events, widespread distribution of promotional and point of sale materials, product samplings, apparel and merchandise bearing the MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress, promotion in magazines and other industry publications, promotion on the MONSTER ENERGY® website and other websites, promotion through social media, and attendance at trade shows.

20. Shown below are true and accurate representative pictures illustrating just a few examples of Monster Energy's MONSTER ENERGY® point of sale materials bearing its famous MONSTER ENERGY® mark and/or MONSTER ENERGY® Trade Dress:






21.     Monster Energy has also engaged in promotional activities with the tool industry since at least 2006.  For example, between September 2006 and January 2007, Monster Energy engaged in a marketing campaign with Makita Tools.  Under this program, known as the Monster Makita Ultimate Truck Sweepstakes, the grand-prize winner received a GMC truck filled with MONSTER ENERGY® drinks and Makita tools. Seventy-five (75) first-prize winners also received a Makita LXT600 six-piece combo tool kit valued at $699.  An advertisement for this sweepstakes is shown below:



22.     In addition, Monster Energy has authorized the use of its MONSTER
ENERGY® Marks and MONSTER ENERGY® Trade Dress in connection with licensed
toolboxes.  For example, in 2012, Monster Energy authorized the use of the MONSTER
ENERGY® Marks on a limited-edition series of Snap-on toolboxes in connection with
Monster Energy's sponsorship of professional rally driver Ken Block.

23.     Monster Energy also markets and promotes its beverage products in stores
that are not traditional beverage channels, such as Lowe's, Auto Zone, and Home Depot.
For example, Monster Energy conducts sampling events and other activities featuring the
MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress in hardware and
department stores such as Lowe's, Home Depot, Sears, and Walmart.

24.    Monster Energy also markets its products by sponsoring teams and athletes who compete at motorsports events.  During these events, the athletes and teams use tools and equipment to maintain Monster Energy-sponsored vehicles such as race cars, trucks, and motorcycles.  These vehicles, and the uniforms of the athletes and team members, prominently display Monster Energy's famous MONSTER ENERGY® mark and MONSTER ENERGY® Trade Dress.  As a result, when motorsports events are broadcast on television or the internet, viewers observe the MONSTER ENERGY® mark and MONSTER ENERGY® Trade Dress in close proximity with tools and equipment.  An example of one of Monster Energy's sponsored vehicles competing in a motorsports event is shown below:



25.    Monster Energy sponsors or has sponsored a wide variety of motorsport

athletes, teams, and/or activities, including, but not limited to, NASCAR, Formula 1, MotoGP, Moto2, Supercross, Motocross, MXGP, MX2, drag racing, drifting, flat track, off road, rally, rallycross, snowmobile, speedway, stunt, superbike, and freestyle motocross.

26.     On January 1, 2017, Monster Energy became the title sponsor of NASCAR's premier series (formerly called the NASCAR Sprint Cup Series), which was called the Monster Energy® NASCAR Cup Series.  As a result of the sponsorship, Monster Energy became the official energy drink of NASCAR.  NASCAR is the second most watched sport in the United States, with more than five million fans watching each race.

27.     Monster Energy also sponsors or has sponsored athletes and teams who compete in other four-wheel racing events, including, but not limited to, Formula One, SCORE Off-Road Racing events, the King of the Hammers desert racing event, and the Off-Road Championship event (TORC).  Monster Energy sponsors or has sponsored the following teams that compete in four-wheel racing events: the Mercedes AMG PETRONAS F1 Racing Team (formerly named the Mercedes GP Petronas Formula One Team) that competes in the FIA Formula One World Championship Series with 6-time Formula One World Champion, Lewis Hamilton, the Holden Racing Team, and the MONSTER ENERGY® X-Raid racing team.  In addition, the Monster Energy-sponsored Mercedes AMG PETRONAS F1 Racing Team previously included seven-time World Champion Michael Schumacher before Schumacher's retirement in 2012.

28.     Monster Energy also has a global partnership with Lewis Hamilton, which is separate and in addition to Monster Energy's sponsorship of the Mercedes AMG PETRONAS F1 Racing Team.  Lewis Hamilton is the current Formula One World

Champion.  As part of this global partnership, Monster Energy and Lewis Hamilton have released a signature drink together.

29.     Monster Energy also has and continues to widely market and promote its MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress in connection with motorcycle racing events.  For example, Monster Energy sponsors or has sponsored the following motorcycle racing events: MotoGP motorcycle racing events, the Outdoor National Motocross Series, the X Games, the MONSTER ENERGY® AMA Supercross Series, the MONSTER ENERGY® Speedway World Championship, Arenacross events, MX1 and MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, and the FIM MX Junior World Championship, among others.  Monster Energy also sponsors teams that compete in motorcycle racing events including, for example, the ProCircuit Kawasaki Motocross/Supercross Team, the MONSTER ENERGY® Kawasaki Factory Team, the Yamaha Factory MotoGP Team with its renowned racers Valentino Rossi and Jorge Lorenzo, the MONSTER ENERGY® Yamaha Tech 3 MotoGP Team, the Yamaha MX1 Team, the Yamaha MX2 Team, and Team Babbitt's/Monster Energy/AMSOIL/Kawasaki Arenacross team.

30.     Many of Monster Energy's motorsports sponsorships involve athletes and teams that are co-sponsored by tool companies such as Dewalt, Stanley, MAC Tools, Mechanix Wear, Makita, and GearWrench.  Representative images showing Monster Energy and tool companies co-sponsoring motorsport athletes and/or teams are shown below:









31.     In addition to its motorsports sponsorships, Monster Energy also sponsors athletes or athletic teams who compete in a wide-variety of other sports, including, but not limited to, athletes competing in the Ultimate Fighting Championship ("UFC"), the X Games, Professional Bull Riding, the Kentucky Derby, the Professional Golfers Association ("PGA"), the National Hockey League ("NHL"), and the National Football League ("NFL").

32.     For example, Monster Energy sponsored Victor Espinoza and American Pharoah, who won the American Triple Crown and the Breeder's Cup Classic in 2015.

Monster Energy also sponsors Rob Gronkowski, a professional football player who plays for the NFL's Tampa Bay Buccaneers. In 2011, while playing for the New England Patriots, Gronkowski set NFL single-season records for touchdowns and receiving yards by a tight end and became the first tight end in NFL history to lead the conference in scoring. Additionally, Monster Energy sponsors UFC athletes who have held championships, including Daniel Cormier, a light heavyweight champion in the UFC, Paige VanZant, a former straw weight and Dancing With the Stars (U.S.) Season 22 runner-up, Tyron Woodley, a welterweight champion, Conor McGregor, a former featherweight champion in the UFC, and Ronda Rousey, a former UFC women's bantamweight champion.

33. Since 2015, Monster Energy has sponsored the UFC as its official energy drink partner (excluding in Brazil). The MONSTER ENERGY® Marks and/or the MONSTER ENERGY® Trade Dress appear on the fighter gate vertical bumpers for all live UFC events and on the Octagon Girls uniforms, excluding those which take place in Brazil.

34. Monster Energy also began sponsoring Tiger Woods in 2016. Tiger Woods is one of the most successful and famous golfers in the world. In his storied career, Woods has won fifteen major championships, including the prestigious Masters Tournament, the U.S. Open, the British Open Championship, and the PGA Championship.

35. Since 2014, Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress have been featured at the Anaheim Ducks (NHL) home arena. Monster Energy has been designated as the exclusive "Official Energy Drink of the Anaheim Ducks and the Honda Center." Additionally, Monster Energy's

MONSTER ENERGY® Marks have been featured on the boards (low walls that form the boundaries of the hockey rink), on virtual glass behind one of the goals, and on the Zamboni machine during Anaheim Ducks NHL games at the Honda Center as shown below:





36.    Since 2018, Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress, have also been featured at other NHL arenas and games, such as the New Jersey Devils, the Boston Bruins, and the Montreal Canadiens. Monster Energy is currently the Official Energy Drink of the Boston Bruins and TD Garden

Arena.  Images showing Monster Energy's MONSTER ENERGY® Marks and MONSTER

ENERGY® Trade Dress displayed at the New Jersey Devils' and Boston Bruins' arenas

are shown below:

 

37.     Monster Energy's MONSTER ENERGY® Marks and MONSTER

ENERGY® Trade Dress were also marketed and promoted while prominently displayed on

the Las Vegas monorail (the "Monster Train").  In 2003, Monster Energy engaged in a

massive advertising campaign in connection with its sponsorship of the Monster Train,

which prominently featured its famous MONSTER ENERGY® mark and MONSTER

ENERGY® Trade Dress.  The Monster Train was featured in The Wall Street Journal,

Time, and USA Today in 2003, and these articles were read by an estimated 32 million

people in the U.S.  In addition, television and internet reports that discussed the Las Vegas

Monster Train reached another 70 million readers, and television and radio promotions

were circulated to approximately 36 million people in the U.S.

38.     Monster Energy's MONSTER ENERGY® Marks and/or MONSTER

ENERGY® Trade Dress have also received significant exposure in national publications.

For example, the marks and/or trade dress have been featured in Fortune, Newsweek,

Beverage World, Beverage Spectrum, Forbes, and Business Week, among other publications.

39.     Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress also receive extensive publicity and exposure through Monster Energy's websites including its <www.monsterenergy.com> website and social media pages including Monster Energy's Facebook, Twitter, Instagram and YouTube accounts. In 2011, prior to Defendants' acts alleged herein, Monster Energy's Facebook page was the eighth most "liked" page of all brands in the world with 12.7 million "likes."  That same year, Monster Energy's YouTube channel had approximately 16 million views. Today, Monster Energy's Facebook page has more than 25.7 million "likes."  Monster Energy's Instagram page has more than 6.6 million followers and Monster Energy's Twitter page has more than 3.1 million followers.  Monster Energy's YouTube page has more than 423 million views.  Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress are prominently displayed on these websites and social media pages.

40.     Monster Energy's MONSTER ENERGY® line of drinks has achieved substantial commercial success.  Between 2002 and 2011, Monster Energy sold more than 5 billion cans of its MONSTER ENERGY® line of drinks generating more than $8 billion in total retail sales.  Today, Monster Energy's retail sales exceed 4 billion cans per year, with revenues of approximately $8 billion per year.  Monster Energy's MONSTER ENERGY® brand has established itself as the best-selling energy drink brand in the United States by unit volume and dollar value.  While Monster Energy continues to expand its

successful MONSTER ENERGY® line of drinks, Monster Energy's best-selling drink is still the original Monster Energy®, which prominently features the colors green and black.

41.    As a result of Monster Energy's substantial use and promotion of its MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress, the marks and trade dress have acquired great value as specific identifiers of Monster Energy's products and services and serve to identify and distinguish Monster Energy's MONSTER ENERGY® products and services from those of others.  Customers in this Judicial District and elsewhere readily recognize Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress as distinctive designations of the origin of Monster Energy's MONSTER ENERGY® brand of products, services, and promotional items.  The MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress are intellectual property assets of enormous value as symbols of Monster Energy and its quality products, services, reputation, and goodwill.

**B.    <u>Defendants' Infringing Activities</u>**

42.    Defendants are engaged in the business of home energy assessments, residential and commercial insulation installation services, duct maintenance services, and solar panel consultation and installation.  Defendants also own and operate the websites <https://www.myenergymonster.com/>  and <https://www.myenergymonster.com/fl/.

43.    Defendants     maintain     the     Facebook     account <https://www.facebook.com/MyEnergyMonsterFL/?ref=hl>,     the     Twitter     account <https://twitter.com/myenergymonster>,     the     Instagram     account     < https://www.instagram.com/myenergymonster/?hl=en>,     and     the     Pinterest     account

<https://www.pinterest.com/energymonster/>.

44.    Without permission or consent from Monster Energy, Defendants have provided or are offering to provide services using trademarks and trade dress that are confusingly similar to one or more of Monster Energy's MONSTER ENERGY® Marks and the MONSTER ENERGY® Trade Dress.  Leet is the President and Founder of Energy Monster and, upon information and belief, is the controlling force of Energy Monster and directed and committed the tortious acts complained of herein.   Some examples of Defendants' advertisements and in-commerce uses displaying their infringing marks and trade dress are shown below:















45.     As shown above, Defendants are using the mark ENERGY MONSTER, which is confusingly similar to Monster Energy's MONSTER ENERGY® Marks, on and in connection with home energy efficiency services.  In addition, Defendants use the mark ENERGY MONSTER in combination with the colors green and black, which is confusingly similar to Monster Energy's MONSTER ENERGY® Trade Dress.

46.     Additionally, Defendants and their affiliates advertise and promote the confusingly similar ENERGY MONSTER mark at venues and events similar to those attended and used by Monster Energy to promote Monster Energy's goods and services. As mentioned above, Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress have been displayed at numerous sporting events, such as National Hockey League ("NHL") events for the Anaheim Ducks and Boston Bruins.  Defendants' affiliates similarly advertise and display the ENERGY MONSTER mark at sporting events, including hockey events associated with the NHL.  Defendants' affiliates advertise in connection with the Worcester Railers hockey team, a minor league affiliate of the NHL's New York Islanders team.  Worcester is located in Massachusetts and is less than an hour from Boston, MA.  A photo of Defendants' ENERGY MONSTER mark on display during a Worcester Railers event is shown below:



47.     Defendants have attempted to falsely associate Energy Monster with Monster Energy and create a likelihood of confusion by using Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress in a manner that is likely to cause confusion.

48.     Indeed, there have already been multiple instances of actual confusion between the Defendants' confusingly similar ENERGY MONSTER mark and Monster Energy's famous MONSTER ENERGY® mark and MONSTER ENERGY® Trade Dress. Upon information and belief, consumers in Florida have confused Energy Monster and Monster Energy at public events where Defendants have promoted their services and when Defendants' employees have contacted prospective customers over the phone to offer goods and services.

49.     Upon information and belief, Defendants were aware of Monster Energy, the MONSTER ENERGY® Marks, and the MONSTER ENERGY® Trade Dress when Defendants commenced their infringing activities.  Despite having actual knowledge of Monster Energy's MONSTER ENERGY® Marks and the MONSTER ENERGY® Trade Dress, Defendants have refused to cease their infringing conduct and have continued their infringing conduct.

50.     Without permission or consent from Monster Energy, Defendants have infringed Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell products and/or services using the ENERGY MONSTER mark, that is confusingly similar to Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress.

51.     Upon information and belief, Defendants' actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendants' goods and services and are intended to cause consumers and potential consumers to believe that Defendants' business is associated with Monster Energy or Monster Energy's MONSTER ENERGY® family of goods and services, when it is not.

52.     By virtue of the acts complained of herein, Defendants have created a likelihood of injury to Monster Energy's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster Energy's goods and services and Defendants' goods and services, caused dilution of the distinctive qualities of the famous MONSTER ENERGY® mark, and

have otherwise competed unfairly with Monster Energy by unlawfully trading on and using Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress without Monster Energy's permission or consent.

53.     Upon information and belief, Defendants' acts complained of herein are willful and deliberate.

54.     Defendants' acts complained of herein have caused damage to Monster Energy in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from their wrongful acts and infringement.  One form of direct economic injury is in the form of lost licensing opportunities for Monster Energy and loss of control of its trademarks and trade dress.

55.     Defendants' acts complained of herein have caused Monster Energy to suffer irreparable injury to its business.  Monster Energy will suffer substantial loss of goodwill and reputation unless and until Defendants are preliminarily and permanently enjoined from the wrongful acts complained of herein.

## IV.  FIRST CLAIM FOR RELIEF

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

56.     Monster Energy hereby repeats, realleges, and incorporates by reference paragraphs 1-55 of this Complaint as though fully set forth herein.

57.     This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. §1125(a).

58.     As a result of the widespread use and promotion of Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress, the marks and trade dress have acquired strong fame and secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress with Monster Energy.

59.     Defendants have infringed Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress, and created a false designation of origin, by using in commerce, without Monster Energy's permission, the confusingly similar ENERGY MONSTER mark in combination with the colors green and black in connection with the advertisement, offering for sale, and/or sale of Defendants' goods and services.

60.     Defendants' actions have caused and are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster Energy with Defendants, and/or as to the origin, sponsorship, or approval of Defendants' goods and services or Defendants' commercial activities, in violation of 15 U.S.C. §1125(a).

61.     Upon information and belief, Defendants did so with the intent to trade upon Monster Energy's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' goods and services are associated with, sponsored by or approved by Monster Energy, when they are not.

62.     Defendants had actual knowledge of Monster Energy's ownership and prior use of the MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress, and without the consent of Monster Energy, willfully violated 15 U.S.C. §1125(a).

63.     Defendants, by their actions, have damaged Monster Energy in an amount to be determined at trial.

64.     Defendants, by their actions, have irreparably injured Monster Energy. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster Energy's rights, for which Monster Energy has no adequate remedy at law.

## V.  SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

65.     Monster Energy hereby repeats, realleges, and incorporates by reference paragraphs 1-55 of this Complaint as though fully set forth herein.

66.     This is a claim for trademark infringement arising under 15 U.S.C. §1114.

67.     Monster Energy owns valid and enforceable federally registered trademarks for the MONSTER ENERGY® Marks, including at least the registrations listed in paragraph 12 above.

68.     Defendants have used in commerce, without permission from Monster Energy, colorable imitations, and/or confusingly similar marks to Monster Energy's MONSTER ENERGY® Marks that are the subject of at least Monster Energy's U.S. Trademark Registration Nos. 4,721,433; 3,044,315; 3,057,061; 3,908,601; 3,914,828; 3,923,683; 3,908,600; 4,332,062; 4,660,598; 3,044,314; 3,134,842; 4,036,680; 4,036,681;

3,134,841; 4,865,702; and 3,852,118 in connection with the advertising, marketing, and/or promoting of Defendants' goods and services.  Such use is likely to cause confusion or mistake, or to deceive.

69.     Upon information and belief, the activities of Defendants complained of herein constitute willful and intentional infringements of Monster Energy's registered marks, and Defendants did so with the intent to trade upon Monster Energy's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' goods and/or services are associated with, sponsored by, originated from, or are approved by, Monster Energy, when they are not.

70.     Defendants had actual knowledge of Monster Energy's ownership and prior use of the MONSTER ENERGY® Marks and the MONSTER ENERGY® Trade Dress and have willfully violated 15 U.S.C. § 1114.

71.     Defendants, by their actions, have damaged Monster Energy in an amount to be determined at trial.

72.     Defendants, by their actions, have irreparably injured Monster Energy. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster Energy's rights, for which Monster Energy has no adequate remedy at law.

## VI.  THIRD CLAIM FOR RELIEF

### (Federal Dilution under 15 U.S.C. § 1125(c))

73.     Monster Energy hereby repeats, realleges, and incorporates by reference Paragraphs 1-55 of this Complaint as though fully set forth herein.

74.     This is a claim for federal trademark dilution arising under 15 U.S.C. §1125(c).

75.     Goods and services provided under Monster Energy's famous MONSTER ENERGY® mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.  By virtue of the wide renown acquired by Monster Energy's famous MONSTER ENERGY® mark, coupled with the national and international distribution and extensive sale of various products distributed under the MONSTER ENERGY® mark, Monster Energy's MONSTER ENERGY® mark is famous, and became so prior to Defendants' acts complained of herein.

76.     Defendants' unauthorized commercial use of Monster Energy's famous MONSTER ENERGY® mark in connection with Defendants' business and the goods and services offered by Defendants has caused and is likely to continue to cause dilution of the distinctive qualities of the famous MONSTER ENERGY® mark.

77.     Defendants' acts are likely to tarnish, injure, or trade upon Monster Energy's business, reputation or goodwill, and to deprive Monster Energy of the ability to control the use of its MONSTER ENERGY® mark, and quality of products associated therewith.

78.     Monster Energy is informed and believes, and on that basis alleges, that Defendants' acts of dilution have been willful and deliberate.

79.     Defendants, by their actions, have damaged Monster Energy in an amount to be determined at trial.

80.     Defendants, by their actions, have irreparably injured Monster Energy. Such irreparable injury will continue unless Defendants are permanently and permanently enjoined by this Court from further violation of Monster Energy's rights, for which Monster Energy has no adequate remedy at law.

## VII.  <u>FOURTH CLAIM FOR RELIEF</u>

### (Florida Statutory Unfair Competition)

81.     Monster Energy hereby repeats, realleges, and incorporates by reference paragraphs 1-55 of this Complaint as though fully set forth herein.

82.     This is an action unfair competition under Florida Statute § 501.201 et. seq., Fla. Stat., known as Florida's Deceptive and Unfair Practices Act ("FDUTPA").

83.     By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among consumers and the public and have unfairly competed in violation of FDUTPA.

84.     Defendants' acts complained of herein have resulted in harm to Monster Energy's intellectual property rights in its trademarks and trade dress through harm to Monster Energy's reputation and goodwill, have resulted in lost royalty income, and have caused economic injury to Monster Energy.

85.     Defendants' acts complained of herein constitute unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices which have irreparably injured Monster Energy.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster Energy's rights, for which Monster Energy has no adequate remedy at law.

## VIII.  FIFTH CLAIM FOR RELIEF

### (Florida Common Law Unfair Competition)

86.     Monster Energy hereby repeats, realleges, and incorporates by reference paragraphs 1-55 of this Complaint as though fully set forth herein.

87.     This is an action for unfair competition under the common law of the State of Florida.

88.     Defendants' acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of Florida.

89.     By virtue of the acts complained of herein, Defendants have willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster Energy in violation of the common law of the State of Florida.

90.     Defendants' willful acts of unfair competition under Florida common law have been willful, deliberate, malicious and committed in an outrageous manner justifying the award of punitive damages.  Defendants' had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to Monster Energy would

result and, despite that knowledge, intentionally pursued their course of conduct, resulting in injury or damage to Monster Energy.

91.     Defendants' acts of unfair competition have damaged, injured, and harmed Monster Energy in an amount to be proven at trial.

92.     Defendants' have irreparably injured Monster Energy for which there is no adequate legal remedy.  Such irreparable injury will continue until and unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster Energy's rights.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Monster Energy demands judgment against Defendants as follows:

A.     That the Court render a final judgment in favor of Monster Energy and against Defendants on all claims for relief alleged herein;

B.     That the Court render a final judgment that Defendants have violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing Monster Energy's MONSTER ENERGY® Marks and MONSTER ENERGY® Trade Dress by using a false designation of origin, through the marketing, sale and promotion of Defendants' goods and/or services, including but not limited to, home energy consultations, solar panels, insulation and accessories, branded vehicles, stickers and decals, clothing and apparel, hats, water bottles, bottle openers, beverage coolers and the promotion of goods and services in the sports industry and promotion of sports events and competitions for others.

C.     That the Court render a final judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster Energy's trademark

rights in at least the marks that are subject of U.S. Trademark Registration Nos. 4,721,433; 3,044,315; 3,057,061; 3,908,601; 3,914,828; 3,923,683; 3,908,600; 4,332,062; 4,660,598; 3,044,314; 3,134,842; 4,036,680; 4,036,681; 3,134,841; 4,865,702; and 3,852,118.

D.     That the Court render a final judgment declaring that Defendants have violated and willfully violated 15 U.S.C. § 1125(c) by diluting Monster Energy's famous MONSTER ENERGY® mark.

E.     That the Court render a final judgment declaring Defendants have violated FDUTPA by utilizing unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices;

F.     That the Court render a final judgment declaring Defendants have violated Florida common law by unfairly competing with Monster Energy;

G.     That Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

   i. using the ENERGY MONSTER mark in connection with the advertising, promotion, or sale of Defendants' goods and services, using any of the Monster Energy's MONSTER ENERGY® Marks or MONSTER ENERGY® Trade Dress, in connection with Defendants' goods and/or services, using any of the MONSTER ENERGY® Marks or MONSTER ENERGY® Trade Dress in advertising or promoting Defendants' products and/or services, and/or using confusingly similar variations of any of the

MONSTER ENERGY® Marks or MONSTER ENERGY® Trade Dress in any manner that is likely to create the impression that Defendants' goods and/or services originate from Monster Energy, are endorsed by Monster Energy, or are connected in any way with Monster Energy;

ii.    manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized goods or services under any of Monster Energy's MONSTER ENERGY® Marks or the MONSTER ENERGY® Trade Dress, and/or any confusingly similar marks or trade dress;

iii.   filing any applications or continuing to pursue any applications for registration of any trademarks, trade dress, or designs confusingly similar to Monster Energy's MONSTER ENERGY® Marks or MONSTER ENERGY® Trade Dress, including but not limited to, U.S. Application Serial Nos. 86/418,349 and 86/418,227;

iv.    otherwise infringing any of Monster Energy's MONSTER ENERGY® Marks, the MONSTER ENERGY® Trade Dress, or any of Monster Energy's other trademarks;

v.     falsely designating the origin of Defendants' goods and/or services;

vi.    unfairly competing with Monster Energy in any manner whatsoever; and

vii.   causing a likelihood of confusion or injury to Monster Energy's business reputation.

H.     That Defendants be directed to file with this Court and serve on Monster

Energy within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction pursuant to 15 U.S.C. § 1116;

I.      That Defendants be required to account to Monster Energy for any and all profits derived by Defendants and all damages sustained by Monster Energy by virtue of Defendants' acts complained of herein;

J.      That Defendants be ordered to pay over to Monster Energy all damages which Monster Energy has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

K.      That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as this Court deems appropriate, pursuant to 15 U.S.C. § 1117;

L.      That Defendants' actions be deemed willful;

M.      That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster Energy pursuant to at least 15 U.S.C. § 1117;

N.      That Defendants be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing the ENERGY MONSTER mark and/or any mark containing the word MONSTER in combination with the colors green and black, any of Monster Energy's MONSTER ENERGY® Marks, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118;

O.      That Monster Energy be awarded restitution and disgorgement; and

P. That Monster Energy be awarded such other and further relief as this Court may deem just.

Respectfully submitted,

Dated:  June 3, 2020

By: */s/ Steven J. Nataupsky*
Steven J. Nataupsky (CA SBN 155,193)
*(appearing specially as counsel of record)*
Trial Counsel
Email:  steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
*(appearing specially as counsel of record)*
Trial Counsel
Email:  lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (CA SBN 222228)
*(appearing specially as counsel of record)*
Trial Counsel
Email:  matt.bellinger@knobbe.com
Jason A. Champion (CA SBN 259207)
*(appearing specially as counsel of record)*
Trial Counsel
Email:  jason.champion@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Brian J. Stack (Fla. Bar No. 476234)
Local Counsel
Email:  bstack@stackfernandez.com
Robert Harris (Fla. Bar No. 817783)
Local Counsel
Email:  rharris@stackfernandez.com
STACK FERNANDEZ & HARRIS, P.A.
Brickell Bay Office Tower
1001 Brickell Bay Drive, Suite 2650
Miami, Florida  33131-4940
Telephone: (305) 371-0001
Facsimile: (305) 371-0002

*Attorneys for Plaintiff,*
*Monster Energy Company*



# Exhibit 1



# United States of America
## United States Patent and Trademark Office

# MONSTER ENERGY

**Reg. No. 4,721,433**

**Registered Apr. 14, 2015**

MONSTER ENERGY COMPANY (DELAWARE CORPORATION)
1 MONSTER WAY
CORONA, CA 92879

**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

FOR: PROMOTING GOODS AND SERVICES IN THE SPORTS, MOTORSPORTS, ELECTRON-IC SPORTS, AND MUSIC INDUSTRIES THROUGH THE DISTRIBUTION OF PRINTED, AUDIO AND VISUAL PROMOTIONAL MATERIALS; PROMOTING SPORTS AND MUSIC EVENTS AND COMPETITIONS FOR OTHERS, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-4-2003; IN COMMERCE 1-4-2003.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 3,044,315, 4,036,681, AND OTHERS.

SN 86-219,332, FILED 3-12-2014.

WON TEAK OH, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

**EXHIBIT 1**



**Exhibit 2**



# United States of America
## United States Patent and Trademark Office

## MONSTER ENERGY

**Reg. No. 3,044,315**

**Registered Jan. 17, 2006**

**Amended Sep. 24, 2013**

**Int. Cl.: 5**

**TRADEMARK**

**PRINCIPAL REGISTER**

MONSTER ENERGY COMPANY (DELAWARE CORPORATION)
1 MONSTER WAY
CORONA, CA 92879

FOR: NUTRITIONAL SUPPLEMENTS IN LIQUID [AND NON-LIQUID ] FORM, BUT EX-CLUDING PERISHABLE BEVERAGE PRODUCTS THAT CONTAIN FRUIT JUICE OR SOY, WHETHER SUCH PRODUCTS ARE PASTEURIZED OR NOT, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 78-253,933, FILED 5-23-2003.



*Deputy Director of the United States Patent and Trademark Office*

**EXHIBIT 2**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.   Please check the
USPTO website for further information.   With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

**EXHIBIT 2**



# Exhibit 3

Int. Cl.: 32

Prior U.S. Cls.: 45, 46 and 48

United States Patent and Trademark Office

Reg. No. 3,057,061

Registered Feb. 7, 2006

## TRADEMARK
### PRINCIPAL REGISTER

## MONSTER ENERGY

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
1010 RAILROAD STREET
CORONA, CA 92882

FOR: FRUIT JUICE DRINKS HAVING A JUICE CONTENT OF 50% OR LESS BY VOLUME THAT ARE SHELF STABLE, CARBONATED SOFT DRINKS, CARBONATED DRINKS ENHANCED WITH VITAMINS, MINERALS, NUTRIENTS, AMINO ACIDS AND/OR HERBS, AERATED WATER, SODA WATER AND SELTZER WATER, BUT EXCLUDING PERISHABLE BEVERAGE PRODUCTS THAT CONTAIN FRUIT JUICE OR SOY, WHETHER SUCH PRODUCTS ARE PASTEURIZED OR NOT, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 78-122,679, FILED 4-18-2002.

ANN E. SAPPENFIELD, EXAMINING ATTORNEY

**EXHIBIT 3**

# Exhibit 4

# United States of America

## United States Patent and Trademark Office



**Reg. No. 3,908,601**

**Registered Jan. 18, 2011**

**Int. Cl.: 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE SUITE 201
CORONA, CA 92880

FOR: CLOTHING, NAMELY, T-SHIRTS, HOODED SHIRTS AND HOODED SWEATSHIRTS, SWEAT SHIRTS, JACKETS, PANTS, BANDANAS, SWEAT BANDS AND GLOVES; HEADGEAR, NAMELY, HATS AND BEANIES , IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 5-24-2002; IN COMMERCE 6-30-2002.

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" AND STYLIZED WORDS "MONSTER ENERGY".

SN 77-705,822, FILED 4-2-2009.

JILL PRATER, EXAMINING ATTORNEY

Director of the United States Patent and Trademark Office

**EXHIBIT 4**



**Exhibit 5**

# United States of America

## United States Patent and Trademark Office



**Reg. No. 3,914,828**

**Registered Feb. 1, 2011**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE, SUITE 201
CORONA, CA 92880

FOR: SPORTS HELMETS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-0-2006; IN COMMERCE 1-0-2006.

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" AND THE STYLIZED WORDS "MONSTER ENERGY".

SN 77-705,362, FILED 4-2-2009.

JILL PRATER, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

**EXHIBIT 5**



**Exhibit 6**

# United States of America

## United States Patent and Trademark Office



**Reg. No. 3,923,683**

**Registered Feb. 22, 2011**

**Int. Cl.: 18**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
SUITE 201
550 MONICA CIRCLE
CORONA, CA 92880

FOR: ALL PURPOSE SPORT BAGS; ALL-PURPOSE CARRYING BAGS; BACKPACKS;
DUFFLE BAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 5-0-2004; IN COMMERCE 5-0-2004.

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE
MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" AND THE STYLIZED WORDS
"MONSTER ENERGY".

SN 77-705,810, FILED 4-2-2009.

JILL PRATER, EXAMINING ATTORNEY



*Director of the United States Patent and Trademark Office*

**EXHIBIT 6**

**Exhibit 7**

# United States of America
## United States Patent and Trademark Office



**Reg. No. 3,908,600**

**Registered Jan. 18, 2011**

**Int. Cl.: 16**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE SUITE 201
CORONA, CA 92880

FOR: STICKERS; STICKER KITS COMPRISING STICKERS AND DECALS; DECALS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 1-0-2004; IN COMMERCE 1-0-2004.

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" AND STYLIZED WORDS "MONSTER ENERGY".

SN 77-705,747, FILED 4-2-2009.

JILL PRATER, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

**EXHIBIT 7**

# Exhibit 8

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,332,062**

**Registered May 7, 2013**

MONSTER ENERGY COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE, SUITE 201
CORONA, CA 92880

**Int. Cl.: 14**

FOR: SILICONE WRIST BANDS; SILICONE BRACELETS; JEWELRY, NAMELY, BRACELETS AND WRISTBANDS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

**TRADEMARK**

FIRST USE 12-0-2006; IN COMMERCE 12-0-2006.

**PRINCIPAL REGISTER**

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,841, AND 3,134,842.

THE MARK CONSISTS OF A STYLIZED LETTER "M" TO THE LEFT OF THE STYLIZED WORDS "MONSTER ENERGY".

SER. NO. 85-747,244, FILED 10-5-2012.

REGINA DRUMMOND, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

**EXHIBIT 8**

# Exhibit 9

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,660,598**

**Registered Dec. 23, 2014**

**Int. Cl.: 22**

**TRADEMARK**

**PRINCIPAL REGISTER**

MONSTER ENERGY COMPANY (DELAWARE CORPORATION)
1 MONSTER WAY
CORONA, CA 92879

FOR: LANYARDS; LANYARDS FOR HOLDING WHISTLES, KEYS, EYEGLASSES, SUNGLASSES, MOBILE TELEPHONES, BADGES, IDENTIFICATION CARDS, EVENT PASSES, MEDIA PASSES, PHOTOGRAPHS, RECORDING EQUIPMENT, OR SIMILAR CONVENIENCES, IN CLASS 22 (U.S. CLS. 1, 2, 7, 19, 22, 42 AND 50).

FIRST USE 12-20-2006; IN COMMERCE 12-20-2006.

OWNER OF U.S. REG. NOS. 3,134,841, 3,134,842, AND 4,332,062.

THE MARK CONSISTS OF A STYLIZED LETTER "M" IN THE FORM OF A CLAW TO THE LEFT OF THE STYLIZED WORDS "MONSTER ENERGY". THE WORD "MONSTER" APPEARS ABOVE THE WORD "ENERGY" AND FEATURES A SLASH MARK THROUGH THE LETTER "O".

SN 86-048,359, FILED 8-26-2013.

ZHALEH DELANEY, EXAMINING ATTORNEY



**Deputy Director of the United States**
**Patent and Trademark Office**

**EXHIBIT 9**

# Exhibit 10

Int. Cl.: 5

Prior U.S. Cls.: 6, 18, 44, 46, 51 and 52

Reg. No. 3,044,314

## United States Patent and Trademark Office

Registered Jan. 17, 2006

### TRADEMARK
### PRINCIPAL REGISTER

## M MONSTER ENERGY

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
1010 RAILROAD STREET
CORONA, CA 92882

FOR: NUTRITIONAL SUPPLEMENTS IN LIQUID AND NON-LIQUID FORM, BUT EXCLUDING PERISHABLE BEVERAGE PRODUCTS THAT CONTAIN FRUIT JUICE OR SOY, WHETHER SUCH PRODUCTS ARE PASTEURIZED OR NOT, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 78-253,930, FILED 5-23-2003.

SUSAN HAYASH, EXAMINING ATTORNEY

**EXHIBIT 10**



# Exhibit 11

Int. Cl.: 32

Prior U.S. Cls.: 45, 46 and 48

Reg. No. 3,134,842

## United States Patent and Trademark Office

Registered Aug. 29, 2006

### TRADEMARK
#### PRINCIPAL REGISTER

## M MONSTER ENERGY

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
1010 RAILROAD STREET
CORONA, CA 92882

FOR: BEVERAGES, NAMELY, CARBONATED SOFT DRINKS, CARBONATED DRINKS ENHANCED WITH VITAMINS, MINERALS, NUTRIENTS, AMINO ACIDS AND/OR HERBS, CARBONATED AND NON-CARBONATED ENERGY OR SPORTS DRINKS, FRUIT JUICE DRINKS HAVING A JUICE CONTENT OF 50% OR LESS BY VOLUME THAT ARE SHELF STABLE, AND WATER, BUT EXCLUDING PERISHABLE BEVERAGE PRODUCTS THAT CONTAIN FRUIT JUICE OR SOY, WHETHER SUCH PRODUCTS ARE PASTEURIZED OR NOT, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 78-246,573, FILED 5-7-2003.

AMY HELLA, EXAMINING ATTORNEY

**EXHIBIT 11**

**Exhibit 12**



# United States of America
## United States Patent and Trademark Office

# MONSTER ENERGY

**Reg. No. 4,036,680**

**Registered Oct. 11, 2011**

**Int. Cl.: 5**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE
SUITE 201
CORONA, CA 92880

FOR: NUTRITIONAL SUPPLEMENTS IN LIQUID FORM, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 3,044,314, 3,057,061 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 77-276,979, FILED 9-11-2007.

MICHAEL WIENER, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

**EXHIBIT 12**

<div style="border:1px solid black">

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

</div>

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

<div style="border:1px solid black">

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

</div>

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

Page: 2 / RN # 4,036,680

**EXHIBIT 12**

# Exhibit 13



# United States of America
## United States Patent and Trademark Office

# MONSTER ENERGY

**Reg. No. 4,036,681**

**Registered Oct. 11, 2011**

**Int. Cl.: 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
550 MONICA CIRCLE
SUITE 201
CORONA, CA 92880

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY, ENERGY DRINKS, EXCLUDING PER-ISHABLE BEVERAGE PRODUCTS THAT CONTAIN FRUIT JUICE OR SOY, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 3,044,314, 3,134,842 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 77-276,989, FILED 9-11-2007.

MICHAEL WIENER, EXAMINING ATTORNEY



*Director of the United States Patent and Trademark Office*

**EXHIBIT 13**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**EXHIBIT 13**



# Exhibit 14

**Int. Cl.: 32**

**Prior U.S. Cls.: 45, 46 and 48**

## United States Patent and Trademark Office

**Reg. No. 3,134,841**

Registered Aug. 29, 2006

## TRADEMARK
### PRINCIPAL REGISTER



HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
1010 RAILROAD STREET
CORONA, CA 92882

FOR: BEVERAGES, NAMELY, CARBONATED SOFT DRINKS, CARBONATED SOFT DRINKS ENHANCED WITH VITAMINS, MINERALS, NUTRIENTS, AMINO ACIDS AND/OR HERBS, CARBONATED AND NON-CARBONATED ENERGY AND SPORTS DRINKS, FRUIT JUICE DRINKS HAVING A JUICE CONTENT OF 50% OR LESS BY VOLUME THAT ARE SHELF STABLE, AND AERATED WATER, SODA WATER AND SELTZER WATER, BUT EXCLUDING PERISHABLE BEVERAGE PRODUCTS THAT CONTAIN FRUIT JUICE OR SOY, WHETHER SUCH PRODUCTS ARE PASTEURIZED OR NOT, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 78-246,567, FILED 5-7-2003.

AMY HELLA, EXAMINING ATTORNEY

**EXHIBIT 14**

**Exhibit 15**

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,865,702**

**Registered Dec. 8, 2015**

**Int. Cls.: 5 and 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

MONSTER ENERGY COMPANY (DELAWARE CORPORATION)
1 MONSTER WAY
CORONA, CA 92879

FOR: NUTRITIONAL SUPPLEMENTS IN LIQUID FORM, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY, CARBONATED SOFT DRINKS; CARBONATED DRINKS ENHANCED WITH VITAMINS, MINERALS, NUTRIENTS, PROTEINS, AMINO ACIDS AND/OR HERBS; CARBONATED ENERGY DRINKS AND SPORTS DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-27-2002; IN COMMERCE 4-18-2002.

OWNER OF U.S. REG. NOS. 4,036,680 AND 4,036,681.

THE COLOR(S) GREEN, BLACK, AND WHITE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "M" IN THE FORM OF A CLAW DISPLAYED IN GREEN ABOVE THE STYLIZED WORD "MONSTER" WHICH APPEARS IN THE COLOR WHITE, WHICH IS ABOVE THE WORD "ENERGY" WHICH APPEARS IN THE COLOR GREEN, ALL ON A BLACK BACKGROUND.

SER. NO. 86-521,176, FILED 2-2-2015.

GEOFFREY FOSDICK, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

**EXHIBIT 15**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**EXHIBIT 15**

# Exhibit 16



# United States of America
## United States Patent and Trademark Office

## LO-CARB MONSTER ENERGY

**Reg. No. 3,852,118**
**Registered Sep. 28, 2010**
**Int. Cls.: 5 and 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

HANSEN BEVERAGE COMPANY (DELAWARE CORPORATION)
SUITE 201
550 MONICA CIRCLE
CORONA, CA 92880

FOR: NUTRITIONAL SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 8-0-2003; IN COMMERCE 8-0-2003.

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY, ENERGY DRINKS, DRINKS ENHANCED WITH VITAMINS, MINERALS, NUTRIENTS, AMINO ACIDS AND/OR HERBS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 8-0-2003; IN COMMERCE 8-0-2003.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "LO-CARB" AND "ENERGY", APART FROM THE MARK AS SHOWN.

SER. NO. 77-670,729, FILED 2-13-2009.

JILL PRATER, EXAMINING ATTORNEY



*Director of the United States Patent and Trademark Office*

**EXHIBIT 16**