**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MONSTER ENERGY COMPANY**

    **Plaintiff,**

**v.**                                   **Case No: 8:20-cv-1269-T-35SPF**

**MY ENERGY MONSTER, INC. and**
**JOSHUA LEET,**

    **Defendants.**

_____

**ORDER**

    **THIS CAUSE** comes before the Court for consideration of Defendants' Motion to Stay this Action, (Dkt. 27), and Plaintiff's amended response in opposition thereto. (Dkt. 32) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendants' Motion to Stay.

### I.    BACKGROUND

    This action is brought by Plaintiff, Monster Energy Company ("Monster Energy" or "Plaintiff")—a "nationwide leader in the business of developing, marketing, selling, and distributing beverages"—against Defendants My Energy Monster ("Energy Monster")—a Largo, Florida-based small business that provides home energy assessments, solar panels, and home insulation—and Energy Monster's founder, Joshua Leet. (Dkt. 1) The Complaint asserts causes of action against Defendants for (1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), (2) trademark infringement under 15 U.S.C. § 1114, (3) trademark dilution under 15 U.S.C.

§ 1125(c), (4) unfair competition arising under Florida Statutes § 501.201 *et seq.*, Fla. Stat. (2010), and (5) Florida common-law unfair competition. (Id.)

On July 29, 2015, five years before Monster Energy filed the instant action, Monster Energy initiated a trademark opposition proceeding before the Trademark Trial and Appeal Board ("TTAB") against two trademark applications filed by The Energy Monster, Inc., a Massachusetts sister company of Energy Monster, U.S. Opposition No. 91223020 ("TTAB Action").[1] See TTABVUE 1. In the TTAB Action, Monster Energy contends that Energy Monster's sister company should not be entitled to trademark registration for its ENERGY MONSTER mark (Serial No. 86418227) or for its green Wattson logo design mark (Serial No. 86418349). (Dkt. 27 at 3)

The Trademark Opposition has been extensive and long-lasting. Over the course of five years, there have been over twenty requests for extension of time. The Parties have exchanged substantial discovery, and taken lengthy depositions, including a three-day deposition of Energy Monster. (Dkt. 27 at 5) Thereafter, the Parties engaged in over seven months of settlement negotiations. (Id.) In November of 2019, Energy Monster contends that the Parties reached an "agreement on all material terms." (Id. at 6) On December 30, 2019, Monster Energy advised that it would not sign the settlement agreement unless Energy Monster agreed to change the Wattson logo to a color other than green. (Id. at 8; Dkt. 27-10) On January 16, 2020, with discovery set to close on in the Trademark Opposition on January 22, 2020, Monster Energy filed an opposed Motion

---

1 The docket sheet for the TTAB Opposition is located at: https://ttabvue.uspto.gov/ttabvue/v?pno=91223020&pty=OPP&eno=77. References to filings in the TTAB Opposition are cited as "TTABVUE [document number]."

to Extend Proceedings requesting a 60-day extension of the discovery and other deadlines. TTABVUE 75.

On January 17, 2020, Monster Energy sent numerous subpoenas to Energy Monster's former employees, attorneys, and vendors. On January 21, 2020, the next business day, Energy Monster filed a Motion to Quash and for a Protective Order in Federal District Court, District of Massachusetts on grounds that the non-party discovery issued by Monster Energy was unduly burdensome and oppressive and requested, *inter alia*, that the Court quash the deposition subpoena to Energy Monster's former employee Christine Vlk. The Energy Monster, Inc. v Monster Energy Company, No. 4:20-mc-94003-TSH ("Massachusetts Action") Dkt. Nos. 1, 2. On January 22, 2020, despite the pending Motion to Quash, Monster Energy took the deposition of Ms. Vlk without the participation of Energy Monster. Id. at Dkt. No. 43. On February 7, 2020 and March 11, 2020, Energy Monster, Monster Energy, and the non-party subpoena recipients appeared before Magistrate Judge Hennessey in the Massachusetts Action. Id. After oral argument, Magistrate Judge Hennessy issued a detailed order on March 12, 2020 limiting the scope of subpoenas and specifying what remained for each non-party subpoena recipients to produce. Id. at Dkt. 27. On April 2, 2020, Magistrate Judge Hennessy struck Ms. Vlk's January 22, 2020 deposition testimony in its entirety. Id. at Dkt. 43. On February 7, 2020, Monster Energy filed, in the TTAB Action, a Motion to Compel Discovery. TTABVUE 77. On June 15, 2020, TTAB denied Monster Energy's Motion to Compel without prejudice, and reset the opposition discovery period to close on August 15, 2020. TTABVUE 85.

On June 3, 2020, Monster Energy commenced the instant action. (Dkt. 1) On July 21, 2020, Energy Monster filed the instant Motion to stay this action pending the resolution

of the TTAB Action, which Motion is opposed. (Dkts. 27, 32) On August 11, 2020, the TTAB Action was suspended pending resolution of Monster Energy's Motion to Suspend for Civil Action, in which Monster Energy requested that the TTAB Action be suspended pending the resolution of the instant matter. TTABVUE 86, 88. Energy Monster opposes the suspension of the TTAB Action. TTABVUE 87.

## II. STANDARD OF REVIEW

A district court has the inherent discretionary authority to stay litigation pending the outcome of a related proceeding in another forum. CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1288 (11th Cir. 1982). The Court's power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). The party seeking a stay must demonstrate "a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." Id. at 254–55. "Consistent with the Supreme Court's holding in Landis, court have examined the following factors to determine if a stay is appropriate: (1) whether the stay would prejudice the non-moving party, (2) whether the proponent of the stay would suffer a hardship or inequity if forced to proceed, and (3) whether granting the stay would further judicial economy." Garmendiz v. Capio Partners, LLC, No. 817CV00987EAKAAS, 2017 WL 3208621, at *1 (M.D. Fla. July 26, 2017) (collecting cases).

## III. DISCUSSION

Defendants contend that a stay is warranted because Monster Energy has "weaponized the litigation process itself and steadily complicated the case through

relentless costly, oppressive, and unduly burdensome litigation tactics and discovery."

(Dkt. 27 at 4) Specifically, Defendants argue that the instant action is part of a strategy to "bully" Energy Monster into an unfavorable settlement in the TTAB Action and is "deliberately aimed to prevent the TTAB Action from reaching the merits and being adjudicated." (Dkt. 27 at 4) Defendants contend that it would be inequitable and "extraordinarily inefficient" to allow Monster Energy "to re-litigate that which has been at issue before TTAB since July 29, 2015" and that it will suffer hardship absent a stay because its ability to stay in business during the current global pandemic will be threatened. (Id. at 15–16) Defendants also contend that the instant action involves "substantially overlapping subject matter" as the TTAB Action, and a finding of likelihood of confusion in the TTAB Action "stands to hold a preclusive effect in any federal court action." (Id. at 14–15) Defendants further suggest that the Parties have reached an enforceable settlement agreement, and Energy Monster requests the opportunity to attempt to enforce the agreement prior to engaging in the instant litigation. (Id. at 16)

Monster Energy opposes a stay, contending that, while there is some overlap between the two matters, the instant action is broader in scope than the TTAB Action. (Dkt. 32 at 9–13) Monster Energy also contends that Energy Monster has not demonstrated a clear case of hardship or inequity absent a stay. (Id. at 13–17) Finally, Monster Energy argues it would be prejudiced by a stay because it would be forced to wait "indefinitely to have its infringement and dilution claims adjudicated, while Energy Monster's infringement would continue unrestrained." (Id. at 17–18)

Upon consideration of the Parties' arguments, the Court finds that a stay of these proceedings pending the resolution of the TTAB Action is warranted. This action is in its

early stages, while the TTAB Action has been ongoing for over five years. The history of the TTAB Action also suggests that a stay of this case would be the most efficient course of action. As noted above, discovery before the TTAB was extensive and nearing completion at the time this action was filed. The Parties engaged in lengthy settlement negotiations that may or may not have resulted in a binding settlement. Resolution of that issue in favor of Energy Monster may result in an even more expeditious resolution of the TTAB Action. Restarting the clock at this stage of the proceedings would waste time, money, and effort. Thus, given the lengthy history of the TTAB Action, the Court finds that the interests of judicial efficiency support a stay of the instant litigation.

Moreover, a decision in the TTAB Action on the merits (or a determination that the Parties' settlement agreement is enforceable) would aid the Parties in narrowing the issues essential to Monster Energy's infringement and dilution claims before this Court. The standard for infringement in the district court is the same as the standard used for registration. See B & B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1306 (2015). Accordingly, the decision on likelihood of confusion in the TTAB Action may also have a preclusive effect after the parties have engaged in the review and appeals process following a TTAB decision. See id. at 1310 (finding that the TTAB's ruling on likelihood-of-confusion in registration proceeding is entitled to preclusive effect in a subsequent infringement action "[s]o long as the other ordinary elements of issue preclusion are met"). Even if it does not, the Parties' possible settlement of the TTAB Action may narrow the issues in this action.

Finally, the Court is not persuaded by Monster Energy's argument that it will be prejudiced by the grant of a stay. Monster Energy's suggestion that it requires "prompt

adjudication" of its trademark infringement claims is undercut by its failure to bring this action for over five years.[2] While the court recognizes that the delayed relief that will result from a stay could theoretically cause at least some prejudice to Monster Energy if it is ultimately successful in avoiding its settlement and if it prevails in reasserted claims here, the Court finds that the hardship to Energy Monster and the furtherance of judicial economy weigh much more heavily in favor of a stay.

## IV. CONCLUSION

Accordingly, upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Stay this Action, (Dkt. 27), is **GRANTED**.

2. The case is **STAYED** pending completion of the TTAB Action.

3. The Clerk is directed to **TERMINATE** any pending motions and **ADMINISTRATIVELY CLOSE** this case.

4. Upon resolution of the TTAB Action, the Parties **SHALL** advise the Court on the status of this case (i.e., whether it should proceed) and may file a motion to return this case to active status. If the Parties reach a settlement, prompt notice shall be provided in accord with Local Rule 3.08.

**DONE** and **ORDERED** in Tampa, Florida, this 20th day of November, 2020.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

---

2 In its original response to the Motion to Stay, Monster Energy explained that it brought this action five years after commencing the TTAB Action due to its having recently learned of instances of "actual consumer confusion" during Ms. Vlk's stricken deposition. (Dkt. 28 at 7) The Court struck the response, however, noting that it does not intend to consider any part of the stricken deposition in this action. (Dkt. 30) Absent the stricken deposition testimony, there does not appear to be any evidence in this record of actual consumer confusion.

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person